**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0225n.06
Filed: March 28, 2007

**No. 05-6361**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

**v.**                                                                 **ON APPEAL FROM THE UNITED
                                                                         STATES DISTRICT COURT FOR THE**
**CECILIA NIETO,**                                              **EASTERN DISTRICT OF TENNESSEE**

    **Defendant-Appellant.**

                              /


**BEFORE:**    **MARTIN and CLAY, Circuit Judges; and POLSTER,[*] District Judge.**

    **CLAY, Circuit Judge.** Defendant Cecelia Nieto appeals her conviction for conspiracy to possess with the intent to distribute more than 500 grams of cocaine hydrochloride, aiding and abetting the possession of cocaine hydrochloride with the intent to distribute, and aiding and abetting the possession of a firearm in furtherance of a drug trafficking offense. Defendant argues that the evidence was insufficient to sustain her conviction with respect to all counts, that the district court's alleged admission of hearsay evidence requires a new trial, and that the district court committed plain error by failing to hold a sidebar conference to discuss her objection to hearsay evidence. For the reasons that follow, we **AFFIRM** Defendant's conviction.

---

    [*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

**BACKGROUND**

On January 25, 2005, Defendant was charged in a five-count indictment. The indictment alleged that Defendant joined a conspiracy to possess with the intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 21 U.S.C. § 846; that Defendant distributed, attempted to distribute, and possessed with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; and that Defendant aided and abetted the knowing possession of a Raven Arms .25 caliber handgun in violation of 18 U.S.C. §§ 924(c) and 2.[1] On January 31, 2005, Defendant entered a plea of not guilty to all charges.

A jury trial was held on May 9 and 10, 2005. The government attempted to prove at trial that Defendant and Miguel Garcia entered into a conspiracy to distribute cocaine hydrochloride in December of 2004, which lasted until January of 2005. The government produced evidence of two specific drug deals where Garcia and Defendant cooperated to sell or attempt to sell cocaine. Additionally, Garcia and his girlfriend, Rebecca Sparks, testified that an ongoing drug distribution relationship existed between Garcia and Defendant.

---

[1] Specifically, Count One charged Defendant with conspiracy to possess with the intent to distribute more than 500 grams of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 21 U.S.C. § 846; Count Two charged that, on or about December 29, 2004, Defendant aided and abetted the distribution of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; Count Three charged that, on or about January 6, 2005, Defendant aided and abetted the possession of cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; Count Four charged that, on or about January 6, 2005, Defendant aided and abetted the attempted distribution of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; Count Five charged that, on or about January 6, 2005, Defendant aided and abetted the knowing possession of a loaded Raven Arms .25 caliber semiautomatic handgun, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2.

The two specific drug deals occurred on December 29, 2004 and January 6, 2005. On December 29, 2004, Garcia called Defendant, and after that conversation, Garcia and Sparks went to Defendant's house. Defendant was going to sell two ounces of cocaine, in cooperation with Garcia, who would meet the buyer and conduct the transaction. Defendant, Garcia, and Sparks drove to the parking lot of a local restaurant in order to meet the buyer. Defendant handed Garcia the cocaine and a gun. Sparks attempted to talk Garcia out of carrying the firearm, but Garcia insisted upon carrying the weapon. Defendant drove from the restaurant to a nearby hotel, where Garcia left Defendant's car and walked to a carwash located in the immediate vicinity of the hotel. At the carwash, Garcia briefly visited the car of another individual, to whom he sold two ounces of cocaine. After the drug deal, Garcia gave Defendant the money he had received from the drug deal, and he returned the gun to her. Defendant paid Garcia $300 for conducting the transaction. Unbeknownst to Garcia, Sparks, or Defendant, the buyer worked with the government as a confidential informant, and he turned the drugs over to the police. The substance that the confidential informant had purchased was confirmed to be a mixture containing cocaine, which weighed 48.2 grams.

On January 6, 2005, Garcia went to a bar where Defendant was working, and Defendant gave him five ounces of cocaine. Garcia and Defendant then went to Defendant's house, where they picked up a gun. Garcia and Defendant returned to the same carwash, although this time they caravanned in separate cars. At the carwash, Garcia met the buyer, who was a confidential informant working with the government. Before Garcia learned that the buyer was a confidential informant, he and the buyer talked about a drug deal involving a greater quantity of drugs, and Garcia told the buyer that he and Defendant in the future would sell him a kilogram of cocaine. Garcia was planning to meet Defendant at the carwash and give her the money received from the sale of the five ounces

-3-

of cocaine and return the gun to her, but he was arrested before this rendevous could occur. Defendant was arrested at approximately the same time three hundred years away from the carwash. She had intended to give Garcia $400 for transacting this drug deal.

In addition to these two specific drug transactions, the testimony from Garcia and Sparks at trial suggested that Defendant was engaged in the business of selling cocaine. Sparks testified that she had seen Defendant with drugs on numerous occasions, and that everyone knew that Defendant dealt drugs. Garcia testified that prior to the drug deal on December 29, 2004, he had engaged in other drug deals with Defendant. He stated that he would get drugs from Defendant every two to three weeks, in a half-ounce quantity, and that he would only pay for the drugs after he had sold them.

On May 10, 2005, the jury returned a verdict of guilty as to all counts. The jury found, by way of a special verdict form, that the government had proven beyond a reasonable doubt that Defendant was responsible for more than 500 grams of cocaine as alleged in Count One of the indictment. After a hearing on August 18, 2005, Defendant was sentenced to seventy-eight months imprisonment on Counts One through Four, to be served concurrently, and sixty months imprisonment on Count Five, to be served consecutively to the other sentences, for a total sentence of one hundred and thirty-eight months incarceration, to be followed by four years of supervised release. On August 23, 2005, Defendant filed a timely notice of appeal

**DISCUSSION**

**A.    SUFFICIENCY OF THE EVIDENCE**

Defendant contends that the evidence adduced at trial was insufficient to support her conviction with respect to all counts. Whether the evidence at trial was sufficient to support the

jury's verdict is an issue that we review *de novo*. *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). Where a defendant makes a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, as Defendant did in this case, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "When reviewing for the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony." *United States v. Caver*, 470 F.3d 220, 232 (6th Cir. 2006) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)), *petition for cert. filed*, (U.S. Feb. 28, 2007) (No. 06-9796).

### 1.     Conspiracy

Defendant argues that the evidence was insufficient for the jury to find the necessary elements of conspiracy. "The elements of conspiracy are (1) an object to be accomplished. (2) A plan or scheme embodying the means to accomplish that object. (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means." *Id.* (quoting *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999)) (internal quotation marks and brackets omitted). In order to prove a conspiracy to violate the drug laws, the government must establish the following elements beyond a reasonable doubt: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *Id.*

(quoting *Gibbs*, 182 F.3d at 420). A conspiracy to violate the drug laws does not require a formal contract; "[a] tacit or mutual understanding among the parties is sufficient." *Id.* at 233.

There was ample evidence from which a jury could conclude that Defendant knowingly entered into an agreement with Garcia to violate the drug laws, and that Defendant actively participated in the conspiracy. The evidence demonstrated that Defendant and Garcia engaged in a partnership to sell drugs. Sparks testified that, after Garcia received a call from a potential customer, he contacted Defendant, and they drove to complete the drug transaction together. Sparks also stated that Defendant supplied Garcia with the drugs and a gun. Garcia's testimony reinforced Sparks' testimony, and Garcia additionally testified that after he completed the drug transaction, he surrendered the money he received for the drugs to Defendant, and was paid for his services. This business relationship is relevant evidence which tended to show the existence of an agreement. *See id.* at 235 (evidence that defendant hired coconspirator to hold drugs for him was relevant to the existence of a conspiracy).

Garcia's testimony at trial also evidenced a cooperative relationship between himself and Defendant. Garcia testified that he and Defendant engaged in regular drug transactions, whereby he would purchase approximately a half-ounce of cocaine from Defendant every two to three weeks. *See United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003) (evidence of repeated drug deals tends to show conspiracy). Garcia also stated that Defendant would provide him with drugs on credit, which suggests the existence of a conspiracy. *See United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) (selling drugs on credit tends to show conspiracy). In sum, there was no shortage of evidence at trial from which a jury could conclude that Defendant knowingly conspired with Garcia to violate the drug laws.

Defendant argues that "[t]he only evidence for distribution *other than co-defendant testimony* was that [Defendant] was at the place where Mr. Garcia began to go to his drug transaction and was 300 yards away from where Mr. Garcia was arrested." Defendant's Br. at 10 (emphasis added).[2] According to Defendant, neither Sparks nor Garcia gave credible testimony. Defendant avers that Sparks could not be believed because she was offered immunity in exchange for her testimony and because she was Garcia's girlfriend; Garcia was incredible because he made potentially inconsistent statements about whether he was offered a reduction in his sentence in exchange for his plea, and because his testimony was clouded by his hope of obtaining a lighter sentence. Defendant's arguments ignore the well-settled principle that credibility determinations are the jury's job, and do not present a basis for overturning a conviction for insufficient evidence. *Paige*, 470 F.3d at 608 ("'Attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence.'" (quoting *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991) (brackets omitted)). Drawing all credibility determinations in favor of the government, as we must, see *id.*, the testimony of the government's witnesses furnishes a sufficient basis for upholding the jury's verdict.

Defendant also challenges the jury's finding that she was responsible for more than 500 grams of cocaine. Generally speaking, a defendant is responsible for the drug quantities for which she is directly involved, and any quantity that is a reasonably foreseeable consequence of the conspiracy. *See Caver*, 470 F.3d at 246-47 (upholding jury instruction to this effect); *United States v. Bartholomew*, 310 F.3d 912, 923 (6th Cir. 2002) (noting that under the United States Sentencing

---

[2] This statement is not accurate. Because Garcia had pled guilty before trial, he was a *co-conspirator*, but not a *co-defendant*. And although the government offered Sparks immunity, it never alleged that she was even a co-conspirator, let alone a co-defendant.

Guidelines "a participant is responsible for other conspirators' conduct only if that conduct was reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity" (quoting *United States v. Jenkins*, 4 F.3d 1338, 1346 (6th Cir. 1993))); *see also United States v. Pinkerton*, 328 U.S. 640, 646-48 (1946).

It was not necessary for the government to prove that Defendant or Garcia actually delivered a kilogram of cocaine to the confidential informant in order for the jury to convict Defendant of conspiracy to distribute more than 500 grams of cocaine; if Defendant knowingly joined and participated in an agreement to sell more than 500 grams of cocaine then her conviction was proper. Garcia testified that Defendant said that she and Garcia would be able to get a kilogram of cocaine to deliver to the confidential informant. The jury could have believed Garcia, whose testimony was sufficient to establish a conspiracy to distribute more than 500 grams of cocaine. Any attack on Garcia's credibility is an inappropriate basis for a challenge to the sufficiency of the evidence. *Paige*, 470 F.3d at 608.

### 2.      Possession with the Intent to Distribute

Defendant next challenges the sufficiency of the evidence with respect to her convictions for aiding and abetting the possession of cocaine with the intent to distribute. Under 21 U.S.C. §§ 841(a) and (b)(1)(C) (which requires no minimum quantity of cocaine), the elements of the offense are that "(1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). "[T]he essential elements of aiding and abetting are (1) an act by the defendant that contributes to the commission of the crime, and (2) an intention to aid in the commission of the crime." *United States v. Davis*, 306 F.3d 398, 412 (6th Cir. 2002).

A reasonable jury could find that Defendant aided and abetted the possession of cocaine with the intent to distribute on December 29, 2004. Sparks testified that, on December 29, 2004, Defendant drove Garcia to the place where the drug transaction occurred, and that Defendant handed Garcia the drugs. Garcia testified to the same, and also stated that he remitted the money received from the buyer to Defendant. From this evidence, the jury could find that Defendant contributed to the commission of the crime of possession of cocaine with the intent to distribute, and that she had the specific intent to facilitate the crime of possession of cocaine with the intent to distribute.

Likewise, a reasonable jury could find that Defendant satisfied the elements of aiding and abetting the possession of cocaine with the intent to distribute on January 6, 2005. Garcia testified that it was Defendant who gave him the drugs, and that Defendant followed him to the place where the drug transaction was to occur. Garcia also stated that he planned to remit the money from the drug sale to Defendant, who would pay him for his efforts. From this evidence, the jury could find that the elements of aiding and abetting the possession of cocaine with the intent to distribute were satisfied.

**3.      Possession of a Firearm in Furtherance of a Drug Trafficking Crime**

Defendant also contends that the evidence was insufficient for the jury to find that she aided and abetted the possession of a firearm in furtherance of a drug trafficking crime. A defendant is guilty of possessing a firearm in furtherance of a drug trafficking crime if the defendant "during and in relation to any . . . drug trafficking crime . . . , in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1). The government must demonstrate that the defendant intended to use the firearm to "advance, promote, or facilitate" the drug crime. *Paige*, 470 F.3d at 609 (citing *Untied States v. Mackey*, 265 F.3d 457, 461-62 (6th Cir. 2001)); *United States v. Rios*, 449 F.3d

1009, 1012 (9th Cir. 2006). A firearm is used "in furtherance of" a drug crime when it is "strategically located so that it is quickly and easily available for use." *Mackey*, 265 F.3d at 462 (holding that "an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades" was possessed "in furtherance of" a drug transaction).

In the present case, the evidence was sufficient for a reasonable jury to find that Defendant aided and abetted the possession of a firearm in furtherance of a drug trafficking crime. Garcia testified that on January 6, 2005 he and Defendant went to Defendant's house to pick up the Raven Arms .25 caliber semiautomatic handgun before engaging in a drug transaction. The fact that Defendant provided the gun to Garcia so that he could arm himself in preparation for the drug deal is sufficient for a jury to find that Defendant aided and abetted a violation of § 924(c). Defendant again argues that the evidence adduced at trial was insufficient to support her conviction because Garcia was allegedly incredible. As discussed above, however, credibility challenges cannot render otherwise sufficient evidence legally infirm. *See Paige*, 470 F.3d at 608.

**B.      HEARSAY TESTIMONY**

Defendant argues that a new trial is required because the district court improperly admitted hearsay testimony. Defendant has waived this argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999). Defendant cites only a single case, *Crawford v. Washington*, 541 U.S. 36 (2004),[3] and her application of law to facts consists of a single sentence:

---

[3] Defendant misquotes *Crawford*, attributing to the case language that appears nowhere within it. One possibility is that counsel is quoting the Westlaw summary of *Crawford*, which is identical to the quotation in counsel's brief. Of course, only the holding of a Supreme Court case

"In the instant case, the agent for the Government was testifying to was [sic] a Confidential Informant had told him." Defendant's Br. at 12. This cursory treatment of the hearsay issue is insufficient to preserve the argument on appeal.

## C.    REFUSAL TO CONDUCT A SIDEBAR CONFERENCE

Defendant argues that the district court committed plain error by failing to hold a sidebar conference to discuss her hearsay objection. We generally review the district court's conduct during trial for abuse of discretion. *United States v. Hynes*, 467 F.3d 951, 957 (6th Cir. 2006) (citing *McMillan v. Castro*, 405 F.3d 405, 409 (6th Cir. 2005)). Where the defendant fails to object to the district court's conduct at trial, however, our review is limited to plain error. *Id.* at 957-58 (citing *United States v. Owens*, 159 F.3d 221, 227 (6th Cir. 1998)). In order to demonstrate plain error, a defendant must show: "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, [the Court] may then exercise [its] discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Baker*, 458 F.3d 513, 517 (6th Cir. 2006) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)) (internal citations, quotations marks and brackets omitted).

We conclude that Defendant has again waived her argument on appeal. We reiterate that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Layne*, 192 F.3d at 566. Defendant again relies upon a single case, *United States v. Day*, 956 F.2d 124, 124-25 (6th Cir. 1992), where the court held that a new trial was not warranted by the fact that the district court "scathing[ly]" criticized the defendant's counsel at a sidebar conference because the record demonstrated that the sidebar conference occurred

_____

is binding precedent upon this Court. Westlaw summaries do not carry the force of law.

-11-

outside the jury's hearing. Defendant's application of law to facts is also perfunctory. She states that "[s]ince the District Court does not allow sidebars, the [hearsay evidence referenced above] came in anyway. . . . In the instant case, the attorney for Appellant had to argue his objection before the jury. The case should be remanded for re-trial and [sic] allow for sidebars." Defendant's Br. at 12-13. This argument fails to address any element of the plain-error standard (or identify that standard itself), and cites only a single case of tangential relevance. Lacking both persuasive legal authority and developed argumentation, Defendant's argument fails to clear even the low threshold of waiver.

Even if we were to consider Defendant's argument, however, we would find it lacking in merit. Defendant cannot demonstrate plain error. We recognize that the practice of holding sidebar conferences is encouraged. *See United States v. Gallo*, 763 F.2d 1504, 1531-32 (6th Cir. 1985) ("[U]nder our supervisory power we strongly 'suggest that if the trial court needs to confer with counsel about rulings to be made from the bench the safe course is to excuse the jury or retire to chambers and let the reporter record what takes place.'" (quoting *United States v. Brumley*, 560 F.2d 1268, 1281 (5th Cir. 1977))). Moreover, the district court's decision to conduct voir dire and discuss Defendant's hearsay objection within earshot of the jury is not model trial practice. Even granting the unlikely assumption that the district court's conduct constituted an error that was plain, however, Defendant cannot not show that allowing the jury to hear the voir dire examination and counsels' hearsay arguments affected her substantial rights. Defendant points to nothing in the voir dire examination of Detective Beverly that was likely to cause her prejudice, and we can likewise not discern anything in the record that posed a danger to Defendant's substantial rights. Thus, Defendant cannot demonstrate plain error.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** Defendant's conviction.