**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**File Name: 07a0273n.06**

**Filed: April 12, 2007**

**Nos. 06-5053 & 06-5054**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JACQUELINE PRADO (06-5053) and LUIS IVAN | ) | DISTRICT OF TENNESSEE |
| TORRES (06-5054), | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:    BOGGS, Chief Judge; and DAUGHTREY and GIBBONS, Circuit Judges.

PER CURIAM. Jacqueline Prado and Luis Ivan Torres each pled guilty to a charge of conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846. The district court sentenced Prado to 135 months of imprisonment and Torres to 262 months of imprisonment. Each sentence was within the range recommended by the advisory Sentencing Guidelines. On appeal, each defendant argues that his or her sentence is unreasonable. We affirm.

I

*United States v. Prado, No. 06-5053*
*United States v. Torres, No. 06-5054*

Prado and Torres attracted the attention of Drug Enforcement Administration agents investigating alleged drug trafficking between Houston, Texas, and Memphis, Tennessee. The agents discovered that Prado and Torres frequently took one-way flights from Memphis to Houston, then rented cars and drove back to Memphis. A drug dog found evidence of controlled substances in one rental car shortly after Prado returned it. Another time, after their rental car was impounded because Torres was driving it without a license, Prado and Torres were caught attempting to retrieve $32,000 hidden under the dashboard.

Agents conducted about twenty "trash pulls" on the trash discarded from Prado's house, discovering cocaine residue and other evidence of drug trafficking. On two occasions, agents observed Prado dumping the trash. On a separate occasion, officers intervened in a domestic dispute between Prado and Torres. Torres apparently left their home on foot with Prado following by car. After obtaining consent, police searched the bag Torres had been carrying and found a receipt from a Houston hotel and about $1,000 in cash. There is no indication that the officers arrested either Torres or Prado or that they discovered evidence that Torres was abusing Prado.

Nine months after the investigation began, agents arrested Torres after observing him involved in an apparent drug transaction and recovered about 500 grams of cocaine that he discarded while trying to flee. The next day, the agents arrested Prado and executed a search warrant for her house, finding over $20,000 in cash and about 500 additional grams of cocaine. They also found a video showing Prado, Torres, "a large bundle of currency," and an unspecified number of "quarter kilos of cocaine." As part of their guilty pleas, both defendants agreed that they were responsible for between five and fifteen kilograms of cocaine.

–2–

Prado and Torres were no strangers to criminal behavior when their conspiracy began. Prado had ten prior adult convictions. She had received sentences of a year or more of imprisonment for robbery, credit card fraud, and petit larceny. Torres had only three adult convictions. All were for criminal conduct that occurred in 1992 and 1993, when he was seventeen and eighteen years old. But all three offenses were felonies involving the sale of narcotics, and all three resulted in significant prison sentences: Torres received concurrent sentences of three to nine years of imprisonment on two New York state drug charges, was paroled after nine months, and then received a two-year sentence on a Texas state drug charge committed prior to his initial imprisonment.

Given the quantity of cocaine involved, the conspiracy charge against Prado carried a base offense level of 32, *see* USSG § 2D1.1(c)(4), and a mandatory minimum sentence of ten years of imprisonment, 21 U.S.C. § 846 (stating that a conspiracy charge adopts the sentencing range of the underlying substantive offense); *id.* § 841(b)(1)(A) (stating that a defendant possessing with intent to distribute "5 kilograms or more" of cocaine "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life"). The district court concluded that Prado should receive a two-level downward adjustment for acceptance of responsibility, leaving a total offense level of 30, and that her criminal history was in category IV. It calculated that her advisory sentencing range under the Guidelines was 135 to 168 months of imprisonment. USSG § 5A. Prado did not object to this calculation at sentencing and concedes on appeal that it is correct.

The district court determined that, under the Guidelines, Torres was a career offender. *See* USSG § 4B1.1(a) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of

conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."). Based on this classification, it concluded that Torres's criminal history automatically was VI and that, because the conspiracy charge carried a statutory maximum sentence of life in prison, his base offense level was 37. USSG § 4B1.1(b). After applying a three-level downward adjustment for acceptance of responsibility to yield a total offense level of 34, the district court calculated that Torres's advisory sentencing range under the Guidelines was 262 to 327 months of imprisonment. USSG § 5A.

Torres objected to his classification as a career offender, arguing that the district court should not consider the predicate drug convictions because he was a juvenile when the offenses took place – even though he was charged as an adult. Had the district court counted those convictions towards his criminal history, but not toward career-offender status, his advisory sentencing range would have been 151 to 188 months of imprisonment; had it not counted those convictions at all, the advisory range would have been 87 to 108 months of imprisonment, below the statutory minimum sentence of 120 months of imprisonment.

After discussing the sentencing factors listed in 18 U.S.C. § 3553(a)(2), the district court sentenced Prado to 135 months of imprisonment and Torres to 262 months of imprisonment. Both defendants received sentences at the bottom end of their respective Guidelines ranges. The defendants now appeal.

II

A district court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]," which are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). In light of *United States v. Booker*, 543 U.S. 220 (2005), we review the sentence chosen by the district court for reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). "Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task" of giving a sentence that is sufficient, but not greater than necessary. *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006).

The reasonableness inquiry has procedural and substantive components. "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). "A sentence may be considered substantively unreasonable when the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Ibid.* (quoting *Webb*, 403 F.3d at 383). In substantive-reasonableness challenges, this court "credit[s] sentences properly calculated under the Guidelines

with a rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th

Cir. 2006).

A

Both defendants argue that their sentences are greater than necessary to achieve the purposes

of sentencing listed in § 3553(a)(2). We find no merit in their claims.[1]

---

[1]It is worth noting a puzzle caused by the language "a sentence sufficient, but not greater than necessary, to comply with [a set of purposes]." In formal logic, the words necessary and sufficient most commonly refer to two or more separate factors in reaching an ultimate conclusion. Thus, if a result can be achieved by having *either* condition A or condition B, then each is a sufficient condition, but neither is necessary. Or, if the result requires *both* A and B, then both are necessary but neither is sufficient.

The puzzle stems from the application of these concepts to a scalar quantity, like the number of months in a defendant's sentence. Theoretically, for any given defendant, there exists an exact minimum number of months that would be *sufficient* to comply with the purposes of § 3553(a)(2). That is, if a court sentences a defendant to X number of months, that sentence will be just enough to comply with § 3553(a)(2). Numbers of months less than or equal to X would be *necessary* to the result, because sentencing the defendant to anything less than X would fail to comply with § 3553(a)'s mandate. For example, if a law school requires a score of 160 on the LSAT for admission, then a score of 160 would be both necessary and sufficient. Alternatively, a score of at least 155 would only be necessary, but not sufficient.

The language of § 3553(a)'s "parsimony clause," when put against these concepts, seems to say that only one sentence is permissible for any given defendant. That sentence would be the shortest number of months sufficient to meet the purposes of § 3553(a)(2). By the definitions described above, any sentence greater than that number would be more than is "necessary" and would violate § 3553(a). Any sentence shorter, by definition, would be insufficient to comply with § 3553(a)'s mandate.

Should we read the parsimony clause of § 3553(a) literally? Some commentators say that the answer is yes. *E.g.,* Richard S. Frase, *State Sentencing Guidelines: Diversity, Consensus, and Unresolved Policy Issues*, 105 Colum. L. Rev. 1190, 1211 n.100 (2005); Douglas A. Berman, *Punishment and Crime: Reconceptualizing Sentencing*, 2005 U. Chi. Legal F. 1, 48-49. Without directly addressing the question, others imply that the answer is no, emphasizing that a range of sentences is permissible in each case. *E.g.*, Marc L. Miller, *The Foundations of Law: Sentencing Equality Pathology*, 54 Emory L.J. 271, 287 (2005); Mark Tushnet, *The Sentencing Commission and Constitutional Theory: Bowls and Plateaus in Separation of Powers Theory*, 66 S. Cal. L. Rev. 581, 590 (1992); *see also* Michael S. Gelacak, Ilene H. Nagel, & Barry L. Johnson, *Departures Under*

Prado's argument that her sentence is greater than necessary challenges only the substantive reasonableness of her sentence, although she often casts her argument in terms of procedural reasonableness. A sentence is procedurally reasonable as long as the district court considers the applicable Guidelines range and the § 3553(a) factors. *Collington*, 461 F.3d at 808. Prado concedes that the district court considered those things; she simply does not like the substance of the reasoning that it used or the result that it reached.

Regarding the first § 3553(a) factor, the nature and circumstances of the offense, Prado argues that it was unreasonable for the district court to conclude that she was an integral part of the drug conspiracy. We disagree. First, the evidence supporting her guilty plea indicates that, while Torres conducted the actual drug transactions, Prado played a key role in the conspiracy. She discarded drug packaging material, flew to Houston and rented cars in order to purchase drugs, managed the drug conspiracy when Torres was away, and was involved financially in the conspiracy. Second, contrary to Prado's claim, the evidence does not indicate that she participated in the

---

*the Federal Sentencing Guidelines: An Empirical and Jurisprudential Analysis*, 81 Minn. L. Rev. 299, 327 (1996) (noting that the parsimony clause existed when the Guidelines were mandatory, but did not override § 3553(b)'s then-strict limits on departures). Two other circuits have come down somewhere in between, indicating that a within-Guidelines sentence might be unreasonable if *the district court* believed that "a lower sentence would be equally effective in advancing the purposes set forth in § 3553(a)(2)," but that an appellate court, rather than independently selecting the most lenient sentence necessary, should accept the district court's sentence as long as that sentence is within the range of "reasonable" sentences. *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006); *see also United States v. Severance*, No. 06-12593, 2006 U.S. App. LEXIS 32071, at *9 (11th Cir. Dec. 29, 2006) (unpublished) (similar).

We note this puzzle in order to give context to the arguments raised by Prado and Torres that their sentences are longer than necessary.

conspiracy only because she feared abuse from Torres. Police intervened in a domestic dispute between Prado and Torres, but the account of that incident does not suggest that Torres abused Prado; if anything, it might suggest that Prado abused Torres, since the incident involved Torres walking away on foot and Prado driving after him. Regardless, the evidence does not contradict the district court's assessment that "it is difficult for the court to perceive Mr. Torres as . . . in any way forcing [Prado] to do anything."

Regarding the other § 3553 factors, Prado objects to the district court's assessments without rebutting the arguments supporting those assessments. For example, she says that there is no factual basis for the finding below that she is a likely recidivist offender, but never challenges the factual basis provided by the district court: that her criminal history indicates a pattern of using unlawful means to make money. None of these cursory claims supports a conclusion that the district court acted unreasonably.

2

To support his claim that his sentence was greater than necessary to fulfill the purposes listed in § 3553(a), Torres argues that the district court failed to address two considerations that might have suggested a lower sentence: the ten-year gap between the instant conspiracy conviction and the last of his prior convictions and the "relatively minor character" of the Texas offense, which involved the sale of less than a gram of cocaine. His argument could go to either the procedural or substantive reasonableness of his sentence.

Cast as a procedural-reasonableness argument, Torres's claim fails because he did not raise either of these two issues at sentencing. Before the district court, he argued only that his youth at

the time of his predicate offenses made classifying him as a career offender unreasonable; he did not mention the temporal gap between convictions or the details of the Texas offense. A district court does not have to respond to every argument, unmentioned by the defendant, that could support a lower sentence. Its only obligation is to "explain to the parties and the reviewing court its reasons for imposing a particular sentence." *United States v. Jones*, 445 F.3d 865, 871 (6th Cir. 2006). The district court did so here.

Cast as a substantive-reasonableness argument, Torres's claim fails because it does not undermine the district court's general explanation for why it imposed the sentence that it did. The district court explicitly considered the § 3553 factors, ultimately concluding that Torres's "well organized [and] repeated" drug trafficking activity and "established lifestyle" based on drug crime made a "serious" sentence appropriate. The specific facts cited by Torres on appeal plainly do not make this conclusion unreasonable.

B

Torres also advances a narrower challenge to the substantive reasonableness of his sentence, arguing that it was unreasonable for the district court to treat him as a career offender, regardless of what the Guidelines recommend, because the offense conduct underlying his three prior drug convictions occurred when he was only seventeen and eighteen years old. We believe that the district court acted reasonably: it followed the Guidelines by considering his earlier convictions in classifying him as a career offender; a generalized argument that the Guidelines' treatment of youthful offenses is unreasonable cannot succeed given the presumption that within-Guidelines

sentences are reasonable; and Torres's case-specific argument that the following the Guidelines produced an unreasonable sentence in his case lacks merit.

First, the Guidelines clearly direct sentencing courts to consider adult convictions resulting from juvenile conduct in determining career-offender status. As noted earlier, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1. A "prior felony conviction" under § 4B1.1(3) must be an adult conviction, but

> [a] conviction for an offense committed prior to age eighteen is an adult conviction
> if it is classified as an adult conviction under the laws of the jurisdiction in which the
> defendant was convicted (*e.g.*, a federal conviction for an offense committed prior
> to the defendant's eighteenth birthday is an adult conviction if the defendant was
> expressly proceeded against as an adult).

*Id.* § 4B1.2, comment. (n.1). Torres was tried and convicted as an adult for both New York drug-trafficking offenses and for the Texas drug-trafficking offense.

Second, the district court acted reasonably when it followed the Guidelines in treating Torres as a career offender. On appeal, Torres contends that this is not the type of case where application of the Guidelines results in a reasonable outcome. Much of his reasoning is detached from the specific facts of his case. Relying on *Roper v. Simmons*, 543 U.S. 551 (2005), he argues that, for the same reasons of diminished culpability that we no longer execute those who are under 18 when they commit their crimes, courts should give consideration to the immaturity of a defendant at the time of the predicate offenses when rendering a sentence enhanced or based on previous criminal

convictions. This type of generalized argument cannot succeed given the presumption that a within-Guidelines sentence is reasonable. If Torres were correct that *Roper* generally requires sentencing courts to discount convictions for offenses committed when under the age of 18, then a sentence reached without such discounting presumptively would be unreasonable – *even though it follows the Guidelines*. Had Torres convinced the district court to give him a lower sentence, it is possible that the lower sentence would have been reasonable despite the Guidelines' contrary advice. But that is not what happened here, and given the presumption of reasonableness it is plain that Torres cannot prevail on appeal by propounding a generalized challenge to the Guidelines on policy grounds.

Third, Torres fails to demonstrate that the specific facts of his case make a within-Guidelines sentence unreasonable. Torres identifies one fact that distinguishes his case from the typical case of a juvenile offender tried as an adult: the ten-year gap between the predicate drug convictions and the instant conspiracy conviction. He cites two out-of-circuit decisions in which district courts discounted criminal history because of similar temporal gaps separating "youthful" offenses from the offense at issue. *See United States v. Nielsen*, 427 F. Supp. 2d 872, 882-83 (N.D. Iowa 2006); *United States v. Naylor*, 359 F. Supp. 2d 521, 524 (W.D. Va. 2005). This court has affirmed a downward variance granted in part on similar grounds. *See Collington*, 461 F.3d at 816 (Gilman, J., dissenting) (noting that the district court had relied on, *inter alia*, "the 'very young age' at which Collington committed his other crimes" and a break in his criminal history before the offense in question). But the question before us is not whether the district court reasonably could have given Torres a sentence below the Guidelines range. It is whether the district court's within-Guidelines

–11–

sentence was reasonable. The district court gave a thorough explanation of why it did not view a

downward variance as appropriate:

> I must say that, you know, convictions when you're 17 or 18, are certainly valid to consider in these circumstances [but] would not be terribly persuasive if we were looking at a different type of conduct . . . but in situations where it is a repeat of the type of conduct that you have experienced earlier, the logical conclusion is that the person has made some decisions about this type of activity and they're willing to engage in it on a repeated basis in the future, and that's the bad thing about our situation here. . . . We have serious criminal conduct coupled with a pattern of past behavior, which would suggest that it is certainly not incidental, it is not opportunistic in any way, it is an established lifestyle, at least for a significant period of time and a fairly good predictor of conduct in the future probably.

Moreover, two facts cast some doubt on Torres's claim of intervening good behavior. First, Torres

participated in this drug conspiracy for at least nine months – and possibly much longer – before his

arrest. Second, although his last prior drug offense took place in 1993, he was not released from

prison until late in 1996. Even if he engaged in no drug activity after his release until January 2003,

when the DEA started to investigate this conspiracy, he was "clean" for slightly over six years, not

ten. Against that background, it was perfectly reasonable for the district court to follow the

recommendations of the Guidelines in its treatment of Torres's prior offenses.

III

The sentences imposed by the district court are AFFIRMED.